UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

CHRISTOPHE ROBERTS,

                           Plaintiff,

       -against-

PUMA NORTH AMERICA, INC.,

                        Defendant.

--------------------------------------------------------x

Case No. 21-cv-2559

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Christophe Roberts ("Roberts" or "Plaintiff"), by his attorneys, Romano Law PLLC, hereby files his complaint against Defendant Puma North America, Inc. ("Puma" or "Defendant"). Plaintiff alleges as follows on personal knowledge as to matters relating to himself and on information and belief as to all other matters:

## NATURE OF THE ACTION

1.    Plaintiff Christophe Roberts brings this action for preliminary and permanent injunctive relief and damages against Puma for infringement of Roberts's intellectual property rights.

2.    This is case about willful infringement by Puma, a global corporation, and its theft of Brooklyn-based award-winning black artist Christophe Roberts's signature artwork and design.

3.    Roberts's calling card brand image is his "Roar" Mark registered with the United States Patent and Trademark Office ("USPTO") as:



4.      As detailed below, Puma hired several artists who worked with Roberts, and then began using iconography similar to Roberts.

5.      Puma ultimately took Roberts Roar Mark, using a similar calligraphic ink outline and contour depiction of teeth with similar line weights and "wild style" aesthetic.

6.      When Roberts asked Puma to cease and desist using his mark, Puma indicated it did not really use the mark for sales, and intended to use it only promotionally.

7.      Instead, Puma expanded sales of merchandise through, for example, a "Bite Back" line under its "Puma Basketball" clothing apparel line using this infringing logo:



8.      Further, Puma is using Roberts's trademark in large national ad campaigns targeting its products to National Basketball League ("NBA") consumers.

9.      Roberts works in fine art and is also famous in the "sneakerhead" community, i.e. individuals who participate in sneaker purchasing and culture, and as to which there is a large crossover to basketball and basketball related clothing and apparel.

10.     Sneakerheads and others who follow Roberts's art have noticed Puma's branding and informed Roberts that Puma "stole" his artwork.

11.     Others have contacted Roberts to ask whether he is working with Puma since his design appears on their merchandise.

12.     Roberts is about to launch his own product line in additional similar merchandise using his trademark.

13.     Roberts's marketing campaigns, brand and image are in imminent danger of being crushed by Puma's national marketing power and distribution channels.

14.     Accordingly, Roberts asserts federal and state claims for trademark infringement and unfair competition, statutory claims and trademark dilution under New York law.

15.     Absent injunctive relief, Roberts will suffer irreparable harm to his goodwill, reputation, and business.

## PARTIES JURISDICTION AND VENUE

16.     Roberts is a natural person and a citizen and resident of the State of New York, Kings County.

17.     Upon information and belief, Defendant is a Delaware corporation with a principal place of business located at 10 Lyberty Way, Westford, Massachusetts 01886.

18.     Upon information and belief, Defendant has a registered agent in this District and can be served in New York City.

19.     Additionally, Defendant has a flagship store located at 609 5th Avenue, New York, New York 10017, with merchandise with the infringing trademark available for purchase.

20.     As such, this Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121 since this is a civil action arising under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*.

21.     This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367 as they are so related to the federal claims in the action that they form part of the same case or controversy.

22.     Defendant transacts business in New York, committed tortious acts within New York, and caused injury to Roberts in New York.

23.     Roberts's claims, alleged below, arise from Defendant's activities in New York.

24.     In particular, upon information and belief, Defendant: (i) regularly solicits and conducts business in New York, (ii) contracts to supply goods and services in New York, (iii) engages in other persistent courses of conduct, and derives substantial revenue from goods used or consumed and services rendered in New York.

25.     Moreover, Defendant committed acts of infringement at issue in this case in New York and in this District.

26.     Defendant's acts of infringement outside of New York caused injury to Roberts in New York, and Defendant expected or should reasonably have expected such acts to have consequences in New York.

27.     Accordingly, the Court has personal jurisdiction over Defendant pursuant to New York CPLR § 302.

28.     This Court also has personal jurisdiction over Defendant because, upon information and belief, Defendant has systematic and continuous contacts with the forum and Roberts's claims arises out of or relate to those contacts.

29.     In addition, Defendant sells merchandise, including merchandise with the infringing trademark prominently displayed, on its highly interactive website, which is continuously accessible, and targets, sells, and ships goods to consumers in New York.

30.     Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because upon information and belief, the events or omissions giving rise to the claims occurred and continue to occur in the Southern District of New York.

## FACTS APPLICABLE TO ALL CLAIMS FOR RELIEF

A.     <u>Background</u>

31.     Roberts is a talented, young, black, Brooklyn-based artist, well-known for his unique sculptures created using sneaker shoe boxes.

32.     Roberts is a Chicago-reared artist of Bahamian and Southern Black American descent.

33.     Roberts artworks grapple with and complicate notions of home, masculinity, and consumerism.

34.     Roberts creates sculptures, paintings, drawings, art installations, and artistic designs that are displayed at art shows, public events, social media, and other media outlets.

35.     Roberts's work is often inspired from Caribbean and African folk tales and repurposes everyday objects to create found art and carbon footprint-free pieces.

36.     His work has been widely exhibited and he has participated in notable shows throughout the United States, including without limitation, at Lyons Wier Gallery in New York, New York, NBA Allstar Week in Chicago, Illinois, NBA Art Week in Vancouver, Canada, Widen+Kennedy in Portland, Oregon, New Gallery of Modern Art in Charlotte, North Carolina, Long View Gallery in Washington D.C., Islip Art Museum in Long Island, New York, Mocada Museum in Brooklyn, New York, and Royal Ontario Museum in Toronto, Ontario.

37.     Roberts also regularly collaborates with popular individuals and brands to create and exhibit his work, including Nike conventions such "Air Max Con 2016" and on Nike's

website.  *See* <u>Exhibit 1</u> annexed hereto is a true and accurate screenshot of Roberts featured on Nike's Website.

38.    His ongoing commissions with Nike include sculptures as the Manhattan flagship store and the Stapes Center as well as his commissioned sculptures and installations.

39.    Roberts was prominently featured in a two-part highlight of his work by Esteban Serrano on *Complex*, a large media platform, with over 2.4 million subscribers on social media, that is focused on style, sneakers, and sports.  *See* Esteban Serrano, *Christophe Roberts Shares His World of Sneaker Box Sculptures (Part 1),* COMPLEX (Mar. 16, 2018), https://www.complex.com/sneakers/2018/03/christophe-roberts-shares-his-world-of-sneaker-box-sculptures;  Esteban Serrano, *Christophe Roberts Shares His World of Sneaker Box Sculptures (Part 2),* COMPLEX (Mar. 20, 2018), https://www.complex.com/sneakers/2018/03/christophe-roberts-shares-his-world-of-sneaker-box-sculptures-2.

40.    Roberts was recently awarded the 2020 Colene Brown Art Prize, which awards grants to ten New York-based visual artists.

41.    Roberts has also been successful in commissioning multiple private pieces.

42.    Moreover, Roberts is immersed in sneaker culture and recognized as a "sneakerhead."

43.    Sneakerhead is a term referring to a sneaker enthusiast, who collects and trades sneakers as a hobby, and who is typically knowledgeable about the history of sneakers.

44.    Sneakerhead culture has a strong overlap with basketball related merchandising, clothing, marketing, and art.

45.   Roberts's popularity and notoriety have allowed him to grow a successful business, which includes selling merchandise such as t-shirts, jackets, hats, posters, pins, and more.

46.   Through extensive efforts and energy, Roberts developed substantial brand recognition and goodwill.

47.   Since as early as 2013, Roberts used a unique stylized symbol, which he designed himself, as his artistic signature and to represent his overall brand (the "Roar Mark").

48.   Beginning in or around 2013, Roberts began using the Roar Mark on all of his art and social media, including his Instagram account "@therealchristophe," and website at https://www.christopheroberts.com.

49.   In early 2014, Roberts first used the mark in commerce through a jacket he designed which prominently featured the mark.

B.   The Registered "Roar Mark" Design and Use

50.   The Roar Mark consists of a design of an outline of sharp teeth, wherein the design consists of an upper row of teeth and lower row of teeth, each of which is depicted as an individual hand-drawn outline.

51.   The Roar Mark, featured below, has become synonymous with Christophe Roberts and is a core part of his professional identity.



52.     In or about early 2014, a jacket designed for Roberts's brand, featured below, that prominently featured his Roar Mark.



53.     The above jacket was the first time Roberts used the Roar Mark on merchandise in commerce in or about early 2014.

54.     In or about the summer of 2014, Roberts expanded his merchandise and started selling jackets, t-shirts, hoodies, and pins with the Roar Mark prominently featured.

55.     Roberts promoted his Roar Mark on all his merchandise, including without limitation, jackets, t-shirts, hoodies, pins.

56.     Roberts uses the Roar Mark in all his advertisements and promoted his merchandise and art under the Roar Mark.

57.     Roberts also invested in paid advertisements on social media to expand his brand's reach.

58.     Roberts recently hired public relations personnel to expand his brand reach.

59.     The Roar Mark continues to be prominently featured on both his artwork and his merchandise.

60.     Roberts's merchandise is advertised, promoted, and offered for sale at his studio, Manza Studios, in Brooklyn, New York, art shows he attends—including the 2014 Afropunk Festival—and on his website at https://www.christopheroberts.com/manzastudios.

61.     In or about December 2020, Roberts removed all of his merchandise for sale from his website in order to prepare for the relaunch of his brand on the website.

62.     Roberts's brand relaunch is currently scheduled for mid-April 2021, after which all of Roberts's merchandise, baring the Roar Mark, will be available online for purchase.  Annexed as Exhibit 2 hereto is a true and accurate depiction of examples of Roberts merchandise bearing the Roar Mark.  Annexed as Exhibit 3 hereto is a true and accurate depiction of Roberts's prominent display and use of his Roar Mark on his artwork on his website, his studio, and at various art showings.

63.     Exhibit 3 annexed hereto depicts some of Roberts's prominent use of his Roar Mark in his art and at his art installations.

64.     Roberts was one of two artists at the 2020 NBA Allstar week who had his own designated area.

65.     Roberts's merchandise has been purchased by customers in many states across the United States, and internationally.

66.     Roberts also has a strong social media presence on his Instagram account "@therealchristophe," where the Roar Mark is prominently featured in his posts and main profile picture.

C.     Roberts's Successful Registration of the Roar Mark with the USPTO

67.     On or about December 10, 2018, Roberts filed an application with the United States Patent and Trademark Office ("USPTO") to register the Roar Mark under Serial Number 88223502, noting a first use in 2012 and a first use in commerce in 2014.

68.     On November 19, 2019, the USPTO registered The Roar Mark under Registration Number 5,912,449 for T-shirts, hoodies, jackets, and custom design and development of visual art displays. *See* Exhibit 4.

69.     Roberts continues to own and use the Roar Mark as a registered and active trademark.

D.     Defendant's Discovery and Theft of the Roar Mark

70.     In January 24 and 25 of 2018, Roberts created an art installation in New York, New York for The Gatorade Company ("Gatorade").

71.     Roberts hired several people to help him execute the Gatorade art installation.

72.     Around January 24, 2018, Emory Jones ("Mr. Jones") went to Roberts's exhibition at the Gatorade installation.

73.     Upon information and belief, Mr. Jones worked with Puma, and has an influential role in the Puma Basketball division.

74.     Roberts met and spoke with Mr. Jones at the Gatorade event.

75.     After Roberts's Gatorade installation, Mr. Jones hired several people who worked with Roberts on the Gatorade installation.

76.     Since then, Puma Basketball has significantly integrated the Roar Mark into their merchandise collection.

77.     In or about June of 2018, Puma started publicly using the Roar Mark on merchandise, and the advertisements, marketing, and promotion of Puma merchandise.

E.      Defendant's Infringement of the Mark to Promote its Basketball Merchandise

78.     Specifically, Puma has been marketing its line of NBA basketball products and prominently using the Roar Mark on its merchandise, including without limitation shirts, jackets, and sweatshirts (the "Infringing Products").

79.     Starting in or around June of 2018, Puma's efforts to court consumers in the basketball market were widely reported.

80.     For example, on June 21, 2018 Vox Media-owned sports blogging website SBNation published Kristian Winfield's article *Here's how PUMA is trying to get back into NBA sneakers*, which featured several photos and social media posts about a Puma store near Barclay's Center in Brooklyn, New York selling merchandise with the Roar Mark.  *See* https://www.sbnation.com/2018/6/21/17490472/puma-hoops-nba-resurgence-marvin-bagley-deandre-ayton-michael-porter-jr-zhaire-smith.



81.    Similarly, on August 1, 2018, ESPN published Nick DePaula's article, *Puma's unexpected NBA comeback: 'You can only surprise people once.'*    See https://www.espn.com/nba/story/_/id/24245215/how-sneaker-brand-puma-making-unexpected-comeback-world-basketball-sneakers-nba.

82.    Reflecting Puma's continuing efforts to brand in the basketball market, on June 11, 2019, Yahoo! Finance published Reggie Wade's article *How Puma is becoming relevant in basketball again*.  This article featured a photo of Deandre Ayton, the first overall NBA draft pick of 2018, wearing a Puma shirt with Roberts's Roar Mark prominently showcased.  *See*, https://finance.yahoo.com/news/how-puma-is-becoming-relevant-in-basketball-210335622.html.



83.    On August 29, 2019 Sneakernews.com, a prominent sneaker and sneakerhead website, published Ross Dwyer's article, *PUMA Hoops Signs Knicks Rookie R.J. Barrett*.  This article featured an @pumahoops social media post which depicted New York Knicks guard R.J. Barrett standing in front of a large multi-story Puma mural in featuring a portrait of Barrett and Puma's logo.  *See*, https://sneakernews.com/2019/08/29/rj-barrett-puma-hoops-shoe-deal/.

12

84.     In short, Puma used the Roar Mark as a prominent part of its valuable push into the basketball market.

85.     For example, featured below are just two examples of the ways Puma infringed on Roberts's mark and incorporated it into its own merchandise available in commerce.

 

Annexed hereto as Exhibit 5 are true and accurate depictions of many examples of such Infringing Products since Puma started using the Roar Mark in or around 2018.  Annexed hereto as Exhibit 6 are true and accurate depictions of just some of the many examples of Puma using the Roar Mark to market its products online via its website at https://us.puma.com/en/us/home, its Puma Basketball Instagram at "@pumahoops", and various other advertising efforts.

86.     As shown in these images, Puma's infringing mark consists of an outline of teeth, similar to the Roar Mark.

87.     Puma's infringing mark also uses a frontal perspective, similar to the Roar Mark.

88.     Puma's infringing mark depicts only the contour of teeth and not a face or other aspect, similar to the Roar Mark.

89.     Puma's infringing mark also uses a hand drawn ink and calligraphic style, similar to the Roar Mark.

90.     Puma's infringing mark also uses a line feel known as "wild style" in graffiti art, similar to the Roar Mark.

91.     Puma's infringing mark uses a similar line weight as Roberts' Roar Mark.

92.     In short, Puma's infringing mark is substantially similar to Roberts' Roar Mark.

93.     Continuing its infringement, Puma Hoops set up a pop-up store in Brooklyn, New York, featured below, that blatantly used Roberts's mark not only on available Chinatown Market merchandise inside, but brazenly on the store front.  *See* Jrich, *Puma Hoops x Chinatown Market 2018 NBA Draft Pop Up Experience: The Return*, MORE THAN STATS, (June 23, 2018), https://morethan-stats.com/puma-hoops-x-chinatown-market-2018-nba-draft-pop-up-experience/.

 

94.     Puma has even copied Roberts's packaging of his merchandise. *See* <u>Exhibit 7</u>.

95.     As show in Exhibit 7, hereto, Puma copied the packaging Roberts used to sell his t-shirt in (i.e. a white take-out container with the Roar Mark drawn on the top) next to a June 20, 2018 photo from @pumahoops Instagram photo marketing, upon information and belief, a limited edition shoe, with a white shoebox and the Roar Mark drawn on the lid.

96.     Additionally, as seen in a widely publicized photo, Shawn Corey Carter, professionally known as "JAY-Z" (hereinafter "Mr. Carter"), attended Game 3 of the NBA Finals

on June 5, 2019 and wore a Puma shirt clearly, and plainly displaying the Roar Mark in white lines on a black background.  *See* <u>Exhibit 8</u>.

97.    In fact, the shirt Mr. Carter wore with the infringing mark is an inverse of a shirt Roberts previously sold.  *Compare* <u>Exhibit 8</u> *with* <u>Exhibit 2</u> at pg. 1 and 3.

98.    Upon information and belief, Mr. Carter is Creative Director at Puma, and works closely with the Basketball Operations within Puma.

99.    Notably, on or about June 6, 2019, Upscale Hype, a high-end lifestyle online magazine, posted a social media post and article after photo of Mr. Carter went viral titled "Jay-Z and Beyonce wears a Paper Planes Hat, Christophe Roberts T-Shirt, and Puma Sneakers with Beyonce in Burberry Coat with By Far Bag".  *See* <u>Exhibit 8</u>.

100.    Roberts received numerous messages and social media posts from friends and fans praising him and congratulating him on his supposed collaboration with Puma and Mr. Carter.

101.    To be clear, Roberts has never collaborated with Puma, and never authorized Puma to use his Roar Mark.

F.    <u>Roberts's Attempts to Protect his Creative Property and Defendant's Continued Use</u>

102.    On or about August 19, 2019, Roberts sent a cease and desist letter to Puma.

103.    Based on following discussions between the parties, Roberts understood that Puma did not intend to use the Roar Mark on items for sale, that it had made limited sales of merchandise using the Roar Mark, and that it did not intend to continue use of the Roar Mark.

104.    Accordingly, Roberts did not pursue his infringement claims at that time.

105.    However, around September and October 2020, Puma rolled out a large advertisement campaign during the 2020 NBA Finals which featured Roberts's Roar Mark.

106.    On or about February 19, 2020, Puma posted on their public website an article titled "Puma full-year and Q4 2019 results" in which the "Brand Strategy" section mentions a successful re-entry into the NBA basketball season and mentions that its "products were very visible on the court throughout the NBA Season, the All-Star Game, the Playoffs and NBA Finals." *See* Exhibit 9 at pg. 10.

107.    On or about November 23, 2020, Statista, a statistics portal specializing in market and consumer data, stating that Puma "bounce[s] back" financially and specifically mentions Puma entering back into the basketball arena and how Puma likely hoped that will increase product sales. *See* M. Shahbandeh, *Puma's net sales worldwide from 1993 to 2019*, Statista (Nov. 23, 2020), https://www.statista.com/statistics/268465/consolidated-sales-of-puma-worldwide-since-1993/.

108.    Statista reports that "German sportswear company Puma generated around 5.2 billion euros from worldwide sales of its footwear, apparel, and accessories in 2020. Consolidated sales revenues have grown by more than 2.5 billion euros since 2014."

109.    Puma continued to expand and profit off its use of Roberts's Roar Mark on more and more of its merchandise.

110.    As Puma expanded their use of Roberts's Roar Mark, more friends, fans, and professionals messaged and continue to message Roberts because they believe he is collaborating with Puma based on Puma's use of his Roar Mark.

111.    Upon information and belief, Puma is still using the Mark on a variety of products in commerce including without limitation its "Pivot Special Men's Crewneck Sweatshirt", "Pivot Special Men's Sweatpants", "Pivot Special Men's Shorts" "Black Fives Long Sleeve Tee", "Black Fives Hoodie", "Colorblocked Men's Basketball Crewneck", "PUMA Hoops Men's Basketball Tee", "PUMA Hoops Men's Logo Tee", "Triple Double Men's Basketball Tank", "PUMA Hoops

Men's AOP Long Sleeve Tee" and other merchandise. *See e.g.,* <u>Exhibit 5</u>. *See generally,* https://us.puma.com/en/us/home (last visited Mar. 23, 2021).

112.   Puma's blatant infringement of Roberts' aesthetic and signature Roar Mark is irreparably harming Roberts.

113.   Roberts is an independent artist who cannot match Puma's massive supply chain and distribution network.

114.   Roberts sells merchandise in the high-end streetwear market, and uses limited release of merchandise product (known as "drops") to protect the value of his brand.

115.   By flooding the market with its merchandise using an infringing mark, Puma is threatening the value of Roberts' brand.

116.   Moreover, Puma has stolen Roberts' ability to exercise creative control and direction over his work.

### FIRST CLAIM FOR RELIEF
**Trademark Infringement and Unfair Competition**
**Lanham Act § 43(a), 15 U.S.C. § 1125(a)**

117.   Roberts incorporates by reference each and every allegation contained above as though fully set forth herein.

118.   Defendant's acts alleged herein are likely to cause confusion, mistake, or deception among consumers or potential consumers as to the source or origin of Defendant's products, and the sponsorship or endorsement of those products and services by Roberts or as to the affiliation, connection or association of Defendant or its products with Roberts or his products or activities.

119.   Moreover, Roberts's trademark is valid and entitled to protection.

120.    The actions of Defendant thereby constitute trademark infringement, false association, false and misleading representations and other acts of unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

121.    Defendant's actions have damaged and continue to damage Roberts.

**SECOND CLAIM FOR RELIEF**
**Trademark Infringement and Unfair Competition**
**Lanham Act § 32, 15 U.S.C. § 1114**

122.    Roberts incorporates by reference each and every allegation contained above as though fully set forth herein.

123.    Roberts owns a valid and legally protectable trademark.

124.    Defendant's acts alleged herein use in commerce a reproduction, counterfeit, copy, and/or colorable imitation of Roberts's registered mark in connection with the sale, distribution, and/or advertising or any goods or services on or in connection with which such use is likely to cause confusion, mistake, or deception among consumers or potential consumers.

125.    The actions of Defendant thereby constitute trademark infringement, false association, false and misleading representations and other acts of unfair competition in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

126.    Defendant's actions have damaged and continue to damage Roberts.

**THIRD CLAIM FOR RELIEF**
**Unfair Competition and Trademark Infringement Under New York Common Law**

127.    Roberts incorporates by reference each and every allegation contained above as through fully set forth herein.

128.    Roberts owns a valid and legally protectable trademark—the Roar Mark—which he uses and advertises to identify his goods and services.

18

129.   The Roar Mark identifies Roberts as the source of goods and services marketed under the mark and has come to represent the valuable goodwill owned by Roberts.

130.   Roberts's art shows, website, social media, and other promotional and marketing efforts described herein also represent Roberts's trade dress.

131.   Defendant's use of the Roar Mark and look and feel of some of the merchandise create a likelihood of confusion among consumers.

132.   Defendant's has also misappropriated the skill, expenditure, and labors of Roberts without Roberts's permission.

133.   This constitutes common law trademark infringement and unfair competition.

134.   Defendant's use of the Roar Mark was knowing, intentional, deliberate, and in bad faith.

135.   Roberts has been damaged by Defendant's actions.

**FOURTH CLAIM FOR RELIEF**
**New York Dilution Statute – N.Y. Gen. Bus. Law § 360**

136.   Roberts incorporates by reference each and every allegation contained above as though fully set forth herein.

137.   Roberts's trademark—the Roar Mark—is distinctive and legally protected.

138.   Defendant began use of the Roar Mark after Roberts's creation and use of the Roar Mark.

139.   Defendant's use of its substantially similar mark, without authorization from Roberts, is likely to dilute the distinctive quality of Roberts's trademark and to decrease the capacity of the mark to identify and distinguish Roberts's products and services, and likely to cause harm to Roberts's business and its reputation.

140.    The acts alleged herein constitute trademark dilution in violation of New York Law, whereby Roberts has been damaged.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Christophe Roberts requests the Court issue an order entering judgment in his favor, and against Defendant Puma North America, Inc., and:

1.  Preliminarily and permanently enjoining Puma, its successors, officers, agents and employees, and anyone acting in active concert or participation with or at the behest or direction of any of them from:

    a.  Using (including, but not limited to, in connection with the promotion, marketing, advertising and sale of products or services) the Roar Mark or any colorable imitation thereof, or any otherwise dilutive or confusingly similar mark in tis advertising, marketing, promotions and otherwise including print, website, and online;

    b.  Copying Roberts's Roar Mark merchandise and use including without limitations to the ways in which Puma has done so in the past as set forth above;

    c.  Doing any other act or thing likely to confuse, mislead or deceive others into believing that Puma, or its products and services, are connected with, sponsored by or approved by Roberts; and

    d.  Engaging in any other activity constituting unfair competition with Roberts or constituting infringement or dilution of Roberts's rights in and to its Roar Mark trademark and other intellectual property.

2.  Permanently enjoining Puma from its unauthorized use of the Roar Mark;

3. Ordering that all merchandise, signage, advertisements, labels, prints, packages, wrappers, and receptacles in possession of Puma bearing the Roar Mark or any colorable imitation thereof be destroyed, and that such symbols be removed from all Internet websites, online advertising, marketing, promotions or other online materials, pursuant to 15 U.S.C. § 1118;

4. Ordering Puma, pursuant to 15 U.S.C. § 1116(a), to file with the Court and serve on Roberts's counsel within thirty (30) days after service of the injunction, a written report, sworn under oath, setting forth in detail the manner and form in which Puma has complied with the injunction;

5. Awarding damages for Puma's violation of the Lanham Act through unauthorized use of the Roar Mark in an amount to be determined at trial;

6. Directing an accounting to determine Puma's profits resulting from its unlawful activities;

7. Awarding Roberts compensation for any and all damages, injury, or harm pursuant to 15 U.S.C. § 1117 and New York law;

8. Ordering full restitution and/or disgorgement of all profits and benefits that may have been obtained by Roberts as a result of Puma's wrongful conduct pursuant to 15 U.S.C. § 1117;

9. Awarding Roberts punitive and exemplary damages;

10. Awarding Roberts's attorneys' fees and costs against Puma inter alia, pursuant to 15 U.S.C. § 1117 and New York law; and

11. Ordering or awarding any other such relief that the Court deems just and proper.

## <u>REQUEST FOR JURY TRIAL</u>

Roberts respectfully requests a trial by jury on all issues so triable.

Dated:        March 24, 2021
              New York, New York

                                        Respectfully submitted,


                                        **ROMANO LAW PLLC**


                                        By:   /s/ Siddartha Rao
                                              Siddartha Rao
                                              Molly Mauck
                                        55 Broad Street, 18th Floor
                                        New York, New York 10004
                                        Phone: (212) 865-9848
                                        Email: sid@romanolaw.com
                                                molly@romanolaw.com

                                        *Attorneys for Plaintiff Christophe Roberts*